**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MAHER ENGINEERING COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 CV 3761 |
| | ) | |
| SCREWMATICS OF SOUTH CAROLINA, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendant's motion for leave to file a counterclaim.  The Court denies the motion for the following reasons.

**DISCUSSION**

Plaintiff, Maher Engineering Company ("Maher"), originally filed this action for breach of contract (Count I), violation of the Illinois Sales Representative Act (Count II), and unjust enrichment (Count III, pleaded in the alternative) in the Circuit Court of Cook County.  Defendant, Screwmatics of South Carolina, Inc. ("Screwmatics"), removed the case to federal court based on diversity of citizenship.

Maher alleges that it was a sales representative for Screwmatics in a territory comprising the states of Wisconsin,

Illinois, and Iowa, and that Screwmatics agreed to pay Maher commissions at a rate of 5 percent for the sales in that territory. Maher contends that Screwmatics failed to pay commissions to Maher as required by the parties' written Sales Representation Agreement (the "Agreement"), which is attached to the complaint as Exhibit A.

Screwmatics filed an answer to Maher's complaint on June 4, 2014. It now moves for leave to file a counterclaim.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 15(a)(2), which governs defendant's motion, states that after a responsive pleading is filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although Rule 15(a) instructs that a court should "freely" give leave to amend "when justice so requires," "a district court may deny leave for a variety of reasons, including undue delay and futility." McCoy v. Iberdrola Renewables, Inc., 760 F.3d 674, 684 (7th Cir. 2014); see also Arreola v. Godinez, 546 F.3d 788, 796 (7th Cir. 2008) ("[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile . . . ."). An amendment is futile if the amended claim could not survive a Rule 12(b)(6) motion to dismiss. See Arlin-Golf, LLC v. Village of Arlington Heights, 631 F.3d 818, 823

(7th Cir. 2011). "The decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." Aldridge v. Forest River, Inc., 635 F.3d 870, 875 (7th Cir. 2011) (brackets omitted).

**ANALYSIS**

Screwmatics seeks leave to file a counterclaim asserting that it is entitled to recover more than $280,000 in commissions that it allegedly mistakenly paid to Maher during the last five years the Agreement was in effect. Screwmatics's theory is that Maher did not earn those commissions because they were not related to orders that Maher "forwarded" to Screwmatics. Screwmatics states in its motion that on October 27, 2014, "counsel for Screwmatics took the deposition of" plaintiff's representative, who "confirmed that many orders on which Maher was paid went directly to Screwmatics and were not forwarded by Maher."[1] (Def.'s Mot. ¶ 2.)

In response, Maher argues that the proposed counterclaim is futile. The proposed counterclaim states in pertinent part:

2. Tom Hogge of Screwmatics may have had a copy of the Agreement after it was signed in April 2001 but his copy was lost.

3. Until August 2013, Screwmatics was not aware of the specific terms of the Agreement which only required that Maher be compensated for "Orders for products solicited by Representative [Maher which] shall be forwarded to and subject to acceptance by Principal."

4. Because it was not aware of this provision,

---

[1] It is unclear why Screwmatics would not have been aware of this fact prior to Maher's deposition.

3

Screwmatics paid Maher on hundreds of orders which came
directly to Screwmatics and were not solicited or
forwarded by Maher. Those payments were not earned under
the contract.

5. Maher, which had the contract and knew its terms,
kept the payments made by Screwmatics despite not having
earned those payments under the terms of the contract.

(Def.'s Proposed Countercl. ¶¶ 2-5.)

Plaintiff contends that the proposed counterclaim could not

withstand a motion to dismiss because defendant misconstrues the

language of the Agreement and because the provision of the

Agreement quoted in paragraph 3 of the proposed counterclaim does

not have anything to do with the earning or paying of plaintiff's

commissions, but rather with defendant's processing of orders. The

Court agrees. The relevant portions of the Agreement provide as

follows:

1. Representative: Principal grants to Representative
the exclusive right, except as otherwise agreed to in
writing between the parties, to act as Principal's sales
representative in the states of Wisconsin, Illinois and
Iowa.
. . .
3. Orders and Collections: Orders for products
solicited by Representative shall be forwarded to and
subject to acceptance by Principal or a duly authorized
representative. Decision regarding a customer's credit
and all matters relating to billing and shipments to
customers shall be made only by Principal. Principal
reserves the right in it's [sic] sole discretion to
decline to accept any order solicited or taken by
Representative and to discontinue sale of any of its
products or to allocate such products during periods of
shortages without incurring any liability to
Representative for the payment of the commissions
hereunder. Principal will promptly forward to
Representative full particulars of all inquiries, orders,
quotation, and relevant correspondence received by

> Principal from companies in the territory of Wisconsin, Illinois and Iowa.
>
> All invoices in connection with orders shall be rendered by Principal direct to the customer, and full responsibility for all collection and bad debts rest [sic] with Principal with commissions to be deducted for bad debts. Representative may extend credit for products purchased, to the limits set by Principal, to persons or firms whose names are furnished him/her in writing by Principal as being entitled to credit. Representative shall be personally responsible for extensions of credit above authorized credit limit, and for credit sales to all other persons or firms.
>
> 4. Representative's Commissions: Commissions in the amount of 5% unless otherwise mutually agreed to prior to quoting the customer, of the net selling price shall be payable by Principal to Representative on orders from customers in the territory of Wisconsin, Illinois and Iowa. . . .

(Compl., Ex. A, at 1.) The Agreement identifies Illinois as the governing law. (Id. at 4.)

Maher is correct that the portion of section 3 of the Agreement that defendant quotes in its proposed counterclaim, which requires Maher to forward to Screwmatics orders it solicits, does not limit Maher's compensation to forwarded orders only. Except with respect to bad debts and orders that Screwmatics declines to accept, section 3 does not address commissions. Section 4, however, which is entitled "Representative's Commissions," does. It plainly states that a 5 percent commission "shall be payable" by Screwmatics to Maher "on orders from customers in the territory of Wisconsin, Illinois and Iowa," and it does not limit commissions to orders that were forwarded to Screwmatics. Defendant's proposed

counterclaim mischaracterizes the unambiguous language of the Agreement.

Defendant suggests in its reply brief that the word "orders" that appears in section 4 of the Agreement is ambiguous and that Section 3 "establishes what 'order' means under the Agreement-- orders 'solicited' and 'forwarded' or 'solicited and taken' by Maher." (Def.'s Reply at 9.) In defendant's view, "[i]f . . . Section 4 was meant to undo the limitations imposed by Section 3 on orders commissionable to Maher, it would have to do so explicitly." (Id.) The Court is unpersuaded. Section 3 establishes a procedure for orders that Maher solicits, but it does not limit Maher's commissions to those that Maher "forwards" to Screwmatics. Screwmatics reads a limitation into Section 4 that does not exist. Section 4 is unambiguous. A court must enforce an unambiguous contract as it is written. See Highland Supply Corp. v. Ill. Power Co., 973 N.E.2d 551, 558 (Ill. App. Ct. 2012); In re County Treasurer, 869 N.E.2d 1065, 1087 (Ill. App. Ct. 2007); J.M. Beals Enters., Inc. v. Indus. Hard Chrome, Ltd., 551 N.E.2d 340, 342 (Ill. App. Ct. 1990) ("In the absence of ambiguity, a court must treat the language in a contract as a matter of law and construe the contract according to its language, not according to constructions which the parties place on this language.").

Screwmatics faults Maher for "never explain[ing] why Screwmatics would have agreed to" an arrangement whereby Maher

would be entitled to commissions on all sales in a given territory regardless of whether Maher "d[id] anything to procure those sales." (Def.'s Reply at 5.) But--assuming that this arrangement did not benefit Screwmatics--it is neither Maher's nor the Court's responsibility to ensure that Screwmatics made a good bargain. See Goodwine State Bank v. Mullins, 625 N.E.2d 1056, 1079 (Ill. App. Ct. 1993); see also Abbott v. Amoco Oil Co., 619 N.E.2d 789, 798 (Ill. App. Ct. 1993) ("[Plaintiffs] seek to read more terms into the leases in order to relieve themselves of the burden of what they apparently perceive to be bad bargains. This the law does not allow them to do.").

Screwmatics also argues in its reply that "there are two generally recognized types of 'exclusive representation agreements,'" an "exclusive right to sell" agreement and the "more common" "exclusive agency" agreement. (Def.'s Reply at 6.) Screwmatics asserts that an "exclusive right to sell" contract confers on the agent the sole right to sell goods in a given area or for a given time period and entitles the agent to commissions on all sales regardless of who makes them. An "exclusive agency" contract, on the other hand, precludes the principal from employing other agents to sell the goods but permits the principal to sell the goods itself without incurring liability to the agent, as long as the agent was not the cause of the sale. Screwmatics contends that the Agreement with Maher does not say that it confers on Maher

the "exclusive right to sell," so it must be an example of the second type of agreement.

Screwmatics fails to cite any Illinois law that supports its argument. It does cite a federal decision applying Michigan law and noting that "[m]ost jurisdictions distinguish between [these] two types of exclusive representation agreements." Roberts Assocs., Inc. v. Blazer Int'l Corp., 741 F. Supp. 650, 656 (E.D. Mich. 1990). Screwmatics fails to acknowledge that Illinois is not one of the jurisdictions that makes this distinction. Indeed, Illinois law differs from that of Michigan. Under Illinois law, a principal is liable for violating an exclusive sales agency agreement where the agent shows that the principal directly sold its goods in the agent's exclusive territory. Illsley v. Peerless Motor Car Co., 177 Ill. App. 459, 464-65 (1913); Marshall v. Canadian Cordage & Mfg. Co., 160 Ill. App. 114, 119 (1911). These decisions, albeit old, stand for the proposition that the language of the contract ultimately controls, not the labels "exclusive right to sell" and "exclusive agency." Cf. TMG Kreations, LLC v. Seltzer, Nos. 13-3535 & 13-3730, 2014 WL 5904713, at *6 (7th Cir. Nov. 13, 2014) (recognizing that Marshall is still good law).

The language of the parties' Agreement provides unambiguously that Screwmatics must pay Maher 5 percent commissions on "orders from customers in the territory of Wisconsin, Illinois and Iowa." (Compl., Ex. A, at 1.) It does not limit those commissions to

orders that Maher "solicits" or "forwards" to Screwmatics. Courts will not construe into a contract provisions that do not exist therein. <u>Westinghouse Elec. Elevator Co. v. La Salle Monroe Bldg. Corp.</u>, 70 N.E.2d 604, 606 (Ill. 1946); <u>Carrillo v. Jam Prods., Ltd.</u>, 527 N.E.2d 964, 967-68 (Ill. App. Ct. 1988).

Defendant's proposed counterclaim could not withstand a Rule 12(b)(6) motion to dismiss and thus is futile. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). Accordingly, the Court, in its discretion, denies defendant's motion for leave to file a counterclaim.

## CONCLUSION

For the reasons explained above, the Court denies defendant's motion for leave to file a counterclaim [25].


DATE:    December 9, 2014


ENTER:    _____

Amy J. St. Eve, United States District Judge